IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN LATEEF WALTERS, | |
| Plaintiff, | 2:23-CV-01956-CCW |
| v. | |
| STEVEN WILLIAMS, JR., BERNADETTE CERVALO, QUINN WILLIAMS, ON-SITE COMPANIONSHIP SERVICES, INC., | |
| Defendants. | |

## OPINION

Before the Court is Defendants Steven Williams, Jr., Bernadette Cervalo,[1] and Quinn Williams' Motion to Dismiss Pro se Plaintiff Sean Lateef Walters' Amended Complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.[2] ECF No. 33. For the reasons set forth below, the Court will **GRANT** the Motion.

## I.    Background

The relevant factual allegations in the Amended Complaint, taken as true, are as follows.

In 2017, On-Site Companionship Services, Inc. ("OCS") was founded by Mr. Walters, Defendants Steven Williams Jr. and Quinn Williams, and non-party Steven Williams III. ECF No. 32 ¶¶ 4, 6. OCS is a Pennsylvania corporation that operates community-based residential care homes for disabled individuals. *Id.* ¶¶ 1, 21. In founding OCS, Mr. Walters, Defendants Mr.

---

[1] In their Motion to Dismiss, Defendants clarify that the "Amended Complaint misspells Bernadette Ceravolo's name as 'Cervalo.'" ECF No. 34 at 1 n.1. Nevertheless, the Court will refer to Defendant "Cervalo" because that is the spelling that appears in the case caption and the parties have not moved to amend the caption.

[2] Defendant On-Site Companionship Services, Inc. has not been served with a copy of the Amended Complaint and has not yet appeared in this case. Accordingly, any references to "Defendants" in this Opinion refers to Defendants Steven Williams, Jr., Bernadette Cervalo, and Quinn Williams.

Williams Jr. and Quinn Williams, and non-party Mr. Williams III "contributed equal capital and agreed that each individual would have 25% ownership."[3] *Id.* ¶¶ 4–5. Mr. Walters served as a director of OCS and the company's Chief Executive Officer, *see id.* ¶¶ 3, 5–8, and "received bi-weekly distributions for his ownership and employment." *Id.* ¶ 6. The Defendants and Mr. Williams III also served as directors of OCS and held various management-level positions. *See* ECF No. 32-2.

In "early 2021," Mr. Walters was "pushed out of [OCS]" by Mr. Williams Jr. because of Mr. Walters' family obligations. ECF No. 32 ¶¶ 3, 8. After Mr. Walters was pushed out, however, Mr. Williams Jr. continued to "us[e] [Mr. Walters'] name as CEO without his knowledge." *Id.* ¶ 3. As Mr. Walters later discovered, Defendant Quinn Williams had forged his signature on certain OCS documents in order to maintain OCS's licensure status so that it could continue to receive funding from the State of Pennsylvania's "Home Health Aid Program." *Id.* ¶¶ 22–27.

Beginning sometime in 2022, "disagreements arose among the shareholders over the use and allocation of corporate assets and credit." *Id.* ¶ 9. Those disagreements eventually led to a forensic audit of OCS, which resulted in the discovery of over $1,000,000 in "misappropriat[ed]" funds. *Id.* ¶¶ 10, 11. When that information came to light,[4] Mr. Williams Jr. "unilaterally terminated the employment of numerous [OCS] employees, including but not limited to Steven Williams III and Quinn Williams." *Id.* Those terminations coincided with the halt of monthly payments that were "being made to [Mr. Walters]" on account of "the ongoing shareholder dispute, and a portion of his rightful 25% ownership pay." *Id.*

---

[3] This allegation appears to partially contradict Mr. Walters' separate allegation that "the individual parties [ostensibly including Defendant Cervalo] are 25% shareholders" of OCS. *Id.* ¶ 1.

[4] The timeline is not clear, but it is implied that this occurred sometime in the spring of 2023. *See* ECF No. 32 ¶¶ 9–10.

Mr. Walters alleges that Mr. Williams Jr. "exceeded his corporate and legal authority in carrying out the terminations." *Id.* ¶ 12. He further alleges that Mr. Williams Jr. and Ms. Cervalo engaged in "self-dealing" by, among other things: (1) "[c]onverting [Mr. Walters'] corporate ownership shares and distributions;" (2) "[c]onverting wages;" (3) "[e]xcluding [Mr. Walters] from receiving dividends, benefits, and distributions;" (4) "[d]enying [Mr. Walters] appraisal rights and the true value of shares in [OCS];" and (5) "[m]isappropriation of corporate funds." *Id.* ¶ 13. Additionally, Mr. Walters alleges that Quinn Williams engaged in "self-dealing" by forging Mr. Walters' signature onto OCS documents and colluding with Mr. Williams Jr. to "convert ownership percentages of [Mr. Walters] and Steven Williams III." *Id.* ¶ 14.

Based on the foregoing allegations, Mr. Walters asserts state law claims for "forgery and fraudulent practices," breach of fiduciary duty, "commercial bribery and breach of duty to act disinterestedly," and conversion against various Defendants.[5] ECF No. 32. The Defendants have moved to dismiss all of Mr. Walters' claims, and Mr. Walters has timely opposed dismissal. ECF Nos. 34, 36, 38. The Motion is thus fully briefed and ripe for resolution.

## II.    Legal Standard

### A.    Rule 12(b)(1) Standard

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge contests subject matter jurisdiction without contesting the facts alleged in the complaint, whereas a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'"

---

[5] The Court has jurisdiction over this matter because the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; ECF No. 32 ¶¶ 15–21.

*Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  "In sum, a facial attack 'contests the sufficiency of the pleadings' . . . 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party*, 757 F.3d at 358 (citations omitted).  Here, Defendants present a facial challenge to subject matter jurisdiction because they argue, in relevant part, that Mr. Walters lacks standing to bring certain claims.  *See* ECF Nos. 34, 38.  As such, in ruling on Defendants' Motion, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Constitution Party*, 757 F.3d at 358 (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)).

### B.    Rule 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").  And when resolving a *pro se* plaintiff's motion, courts "liberally construe *pro se* filings with an eye toward their substance rather than their form."  *See United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010).

## III.    Legal Analysis

The Amended Complaint asserts four claims for violation of Pennsylvania law against various Defendants:[6]  Count I is a claim for "forgery and fraudulent practices" against Quinn Williams, ECF No. 32 at 5;  Count II is a claim for breach of fiduciary duty against Mr. Williams Jr. and Ms. Cervalo, *id.* at 6–7;  Count III is a claim for "commercial bribery and breach of duty

---

[6] The Amended Complaint is structured unconventionally.  Each "Count" is set forth, followed by a corresponding "Cause of Action."  *See, e.g.*, ECF No. 32 at 4–5 (listing "Count I" followed by the "First Cause of Action").  The Court construes each pairing of a Count with its corresponding Causes of Action as stating a single claim for relief.  Additionally, each "Count" is alleged against "Defendants," but each "Cause of Action" is alleged against specific individual Defendants.  The Court construes each claim to be against only those Defendants named in each Cause of Action.

to act disinterestedly" against Mr. Williams Jr. and Quinn Williams, *id.* at 8–9;  and Count IV is a claim for conversion against all Defendants, *id.* at 10–12.  Defendants have moved to dismiss all of Mr. Walters' claims.  ECF No. 34.  For the reasons set forth below, the Court will grant the Defendants' Motion.

### A. Mr. Walters Lacks Standing to Bring a Forgery or Fraud Claim Against Defendant Quinn Williams

In Count I of the Amended Complaint and the "First Cause of Action," Mr. Walters asserts a claim for "forgery and fraudulent practices" against Quinn Williams.  ECF No. 32 ¶¶ 22–27.  Mr. Walters cites 18 Pa. C.S.A. § 4101 as the basis for this claim and alleges that Mr. Williams forged his signature on certain OCS documents in order to maintain OCS's licensure status so that it could receive funding from the State of Pennsylvania's "Home Health Aid Program."  *Id.*  Defendants argue that Mr. Walters has no standing to assert a cause of action for the alleged forgery because the state statute he relies on is a criminal one that does not confer a private right of action.  ECF No. 34 at 5–6.  Defendants further argue that Mr. Walters has not explained how he was injured by the alleged forgery.  *Id.*  The Court agrees with the Defendants.

Section 4101 sets forth the elements of a criminal charge for forgery and provides that forgery can be punished as a felony.  The statute does not, however, confer a private right of action for a civil litigant.  *Robinson v. Coyle*, No. 700 MDA 2014, 2015 WL 6159415, at *5 (Pa. Super. Ct. Apr. 28, 2015) (stating that "there is no private civil cause of action for forgery" under § 4101).

To the extent that Count I asserts a common law fraud claim,[7] Mr. Walters has failed to establish how the alleged forgery injured him such that he has Article III standing to assert a claim.

---

[7] Count I is a claim for "forgery and fraudulent practices."  ECF No. 32 ¶¶ 22–27.  Because Mr. Walters is *pro se*, the Court liberally construes the Amended Complaint, *see Delgado*, 363 F. App'x at 855, and interprets it to attempt to assert a common law civil fraud claim.  If Mr. Walters intended to assert such a claim, it is governed by Pennsylvania state law because Pennsylvania is the forum state and all parties have applied Pennsylvania law in their briefing on the instant Motion to Dismiss.  *See Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (stating that a federal court

The standing doctrine, in Article III, section 2 of the Constitution, limits the judicial power of the United States to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). Thus, federal courts may "resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Assn.*, 588 U.S. 29, 87 (2019)). A "real controversy" exists where the plaintiff can show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–62 (1992). The plaintiff bears the burden of establishing standing "for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 430–31.

In responding to Defendant's Motion to Dismiss, Mr. Walters states that his "cognizable damages" flowing from the alleged forgery "are homelessness, illness, and complete lifestyle change." ECF No. 36 at 1. But neither the Amended Complaint nor Mr. Walters' response to the instant Motion describe any causal link between the alleged forgery and those damages. *See generally* ECF Nos. 32, 36. Accordingly, Mr. Walters has failed to establish Article III standing to assert a fraud claim against Defendant Quinn Williams for forging his signature on OCS documents.[8] *See TransUnion*, 594 U.S. at 424 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)) ("Article III grants federal courts the power to redress harms

---

sitting in diversity applies the substantive law of the forum state); *Galaxy Int'l, Inc. v. Merchants Distribs., LLC*, No. 22-302, 2023 WL 4949864, at *2 (W.D. Pa. Aug. 3, 2023) (Fischer, J.) (citing *Schiavone Constr. Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)) ("[T]he parties do not dispute that Pennsylvania law applies to this case, and the Court need not engage in a choice of law analysis."); *see generally* ECF Nos. 34, 36, 38.

[8] For the same reason, the Amended Complaint would also fail to state a claim for fraud against Defendant Quinn Williams. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022) (noting that under Pennsylvania law, a fraud claim requires "[a] resulting injury proximately caused by" reliance on the alleged fraud).

that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.").

For the foregoing reasons, the Court will therefore dismiss Count I of the Amended Complaint and the First Cause of Action. The portion of this claim asserting a civil claim for forgery under § 4101 will be dismissed with prejudice because amendment would be futile. *See Williams v. Sorg*, No. CV 22-4036, 2023 WL 2939589, at *3 (E.D. Pa. Apr. 13, 2023). The portion of this claim asserting common law fraud will be dismissed without prejudice for lack of standing. *See Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir. 2022) (stating that Article III standing is jurisdictional); *Onyiuke v. New Jersey*, 242 F. App'x 794, 797 (3d Cir. 2007) (citing *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) ("[A] dismissal of an action for lack of subject matter jurisdiction is not a decision on the merits; therefore such a dismissal should be without prejudice.").

### B. Mr. Walters Has Failed to State a Claim for Breach of Fiduciary Duty

In Count II of the Amended Complaint and the "Second Cause of Action," Mr. Walters asserts a claim for breach of fiduciary duty against Defendants Williams Jr. and Cervalo. ECF No. 32 ¶¶ 28–35. Mr. Walters purports to bring this claim under 13 Pa. C.S.A. § 3307 and 18 Pa. C.S.A. § 4108.[9] *Id.* In sum, Mr. Walters alleges that he was "pushed out" of OCS by Defendant Williams Jr., and that Defendants Williams Jr. and Cervalo improperly interfered with his equity interests in OCS and his right to corporate distributions. ECF No. 32 ¶¶ 8, 13, 28–35. Defendants argue that the statutes Mr. Walters cites are not applicable in this case and do not provide him with

---

[9] The Amended Complaint does not identify which Chapter or Title of the Pennsylvania Consolidated Statutes "§ 3307" falls under. *See* ECF No. 32 at 7. However, Mr. Walters' Reply Brief clarifies that the relevant statute is 13 Pa. C.S.A. § 3307. *See* Reply Brief Ex. E, ECF No. 36-5.

a private right of action, and that any fiduciary duties the Defendants owed were to OCS, not to Mr. Walters. *See* ECF Nos. 34 at 6–7;  38 at 2–3.

As an initial matter, the Court agrees with the Defendants that the statutes cited by Mr. Walters are inapplicable to his breach of fiduciary duty claims and do not provide him with a private right of action.  Section 4108 criminalizes commercial bribery;  it does not confer a private right of action for breach of fiduciary duty. *See Hasu Shah v. Harristown Dev. Corp.*, No. 1:12-CV-2196, 2013 WL 6567764, at *11 (M.D. Pa. Dec. 13, 2013) ("The parties do not identify, and the court is unaware of, any Pennsylvania case recognizing a private right of action or civil claim for violations of § 4108(a).").  And § 3307 "determines when a bank has notice of a breach of fiduciary duty," *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 786 (E.D. Pa. 2008), and therefore has no apparent application in this case.

To the extent that Mr. Walters asserts common law breach of fiduciary claims, the Court agrees with the Defendants that he has failed to state a plausible claim.[10]  "To establish a breach of fiduciary duty [under Pennsylvania law],[11] a plaintiff must show:  (1) the existence of a fiduciary relationship;  (2) the defendant's failure to act in good faith and solely for the benefit of the plaintiff with respect to matters within the scope of that relationship;  (3) that the plaintiff suffered an injury;  and, (4) that defendant's failure to act was a 'real factor' in producing the plaintiff's injury." *Meyer v. Del. Valley Lift Truck, Inc.*, No. CV 18-1118, 2021 WL 1923019, at *5 (E.D. Pa. May 13, 2021) (citing *Conquest v. WMC Mortg. Corp.*, 247 F. Supp. 3d 618, 633–34 (E.D. Pa. 2017)).  Here,

---

[10] While Defendants first argue that the statutes cited by Mr. Walters do not confer a private right of action for breach of fiduciary duty, they then further argue that Mr. Walters has failed to state a plausible breach of fiduciary duty claim. *See* ECF Nos. 34 at 6–7;  38 at 2–3.  The Court reaches the latter issue because, construing the Amended Complaint liberally, Mr. Walters may be attempting to assert common law claims for breach of fiduciary duty. *See Delgado*, 363 F. App'x at 855 (directing courts to review *pro se* filings "with an eye toward their substance rather than their form.").

[11] OCS is a corporation formed under the laws of Pennsylvania.  ECF No. 32 ¶¶ 19, 21.  Accordingly, Pennsylvania law governs Mr. Walters' breach of fiduciary duty claims. *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 n.10 (3d Cir. 2005) ("[T]he 'internal affairs doctrine' holds that courts look to the law of the state of incorporation to resolve issues involving the internal affairs of a corporation.").

Defendants challenge whether Mr. Walters has established the first element—the existence of a fiduciary relationship between Mr. Walters and Defendants Williams Jr. and Cervalo.  *See* ECF Nos. 34 at 6–7;  38 at 2–3.

The Court agrees with the Defendants that their fiduciary duties as directors of OCS do not extend to Mr. Walters.  *See* 15 Pa. C.S.A. § 1717 ("The [fiduciary] dut[ies] of the board of directors, committees of the board and individual directors . . . [are] solely to the business corporation and not to any shareholder or creditor or any other person or group.").  However, under Pennsylvania law, majority shareholders have a direct fiduciary duty to minority shareholders that "prevents them from using their power in such a way as to exclude the minority from their proper share of the benefits accruing from the enterprise." *Bair v. Purcell*, 500 F. Supp. 2d 468, 483 (M.D. Pa. 2007) (quotation omitted);  *see also Hill v. Ofalt*, 85 A.3d 540, 550 (Pa. Super. 2014) ("[An] oppressed shareholder ha[s] standing to assert a direct breach of fiduciary duty claim against the oppressor shareholder.").  Here, the Amended Complaint does not plausibly allege the parties' ownership of OCS.  Mr. Walters first alleges that "[t]he individual parties [which would include Defendant Cervalo] are 25% shareholders of [OCS]."  ECF No. 32 ¶ 1.  However, later Mr. Walters states that he, Defendants Williams Jr. and Quinn Williams, and non-party Steven Williams III each had a "25% ownership stake" in OCS.  *Id.* ¶ 4.  Thus, it is unclear whether Defendant Cervalo was a 25% owner of OCS.  If she was, Defendants Williams Jr. and Cervalo— against whom Mr. Walters asserts his breach of fiduciary claims—owned 50% of OCS to Mr. Walters' 25%.  But coming to that conclusion would require the Court to accept some of the allegations in the Amended Complaint as true while rejecting others, which the Court cannot do. *See Phillips*, 515 F.3d at 228 (stating that a district court deciding a motion under Rule 12(b)(6)

must accept as true all factual allegations in the complaint).  The Amended Complaint therefore fails to sufficiently allege whether Defendant Cervalo was also a 25% owner of OCS.

Moreover, even if Defendants Williams Jr. and Cervalo together owned 50% of OCS, it would not necessarily render them "majority" shareholders capable of oppressing Mr. Walters. *Baron v. Pritzker*, 52 Pa. D. & C.4th 14, at *6 (Comm. Pleas 2001) ("[W]ith 50% of the shares of the two corporations, Pritzker is not a majority shareholder.").  Rather, Mr. Walters would need to allege that Defendants Williams Jr. and Cervalo had enough power to "dictate to [Mr. Walters] the manner in which [OCS was] to be run." *Id.* (finding that a shareholder with 50% ownership in two corporations owed a fiduciary duty to the other 50% owner because the shareholder controlled two-thirds of each corporations' board of directors).  Here, while Mr. Walters claims that Defendant Williams Jr. unilaterally "pushed [him] out" of OCS, and that Defendants Williams Jr. and Cervalo improperly interfered with his equity interests and his right to corporate distributions, he does not make any allegations indicating how they had the power to do so. *See generally* ECF No. 32.  Absent such allegations, Mr. Walters cannot establish that Defendants Williams Jr. and Cervalo owed him a fiduciary duty.

For the foregoing reasons, the Court will dismiss Count II of the Amended Complaint and the Second Cause of Action.  Because amendment would be futile with respect to Mr. Walters' statutory claims for breach of fiduciary duty under 13 Pa. C.S.A. § 3307 and 18 Pa. C.S.A. § 4107, dismissal will be with prejudice for those portions of this claim.  To the extent Count II and the Second Cause of Action allege common law breaches of fiduciary duties, dismissal for those portions of the claim will be without prejudice and with leave to amend. *See Passarella v. Citizen's Bank Supermarket Branch*, No. CV 19-108, 2019 WL 399015, at *7 (E.D. Pa. Jan. 31, 2019) (citing *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)) ("A district court should

generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile.").

### C.    Mr. Walters Lacks Standing to Bring a Claim for Commercial Bribery Against Defendants Williams Jr. and Quinn Williams

In Count III of the Amended Complaint and the "Third Cause of Action," Mr. Walters asserts a claim for "commercial bribery and breach of duty to act disinterestedly" against Defendants Williams Jr. and Quinn Williams.  ECF No. 32 ¶¶ 36–42.  Mr. Walters purports to bring this claim under 18 Pa. C.S.A. § 4108.  *Id.*  He alleges that Defendants Williams Jr. and Quinn Williams "colluded to convert owners' percentages," citing to Exhibit E to the Amended Complaint, which Mr. Walters claims is a text message between Defendants Williams Jr. and Quinn Williams.  *Id.* ¶ 37.  Mr. Walters further alleges that Defendant Quinn Williams "withdrew" from a separate case before this Court to manufacture a conflict of interest with OCS' attorneys "in order to continue his collusion with [Defendant Williams Jr.]," and that Defendant Quinn Williams was then rewarded by receiving "a position with [OCS] in which he is now able to carry on his lifestyle he accumulated as a 25% owner of [OCS]."  *Id.* ¶¶ 38–39.  Defendants argue that the state statute cited by Mr. Walters as a basis for his claim is a criminal one that does not give him a private right of action, and that he fails to plead any facts to support a cognizable claim.  ECF No. 34 at 7.

The Court agrees with the Defendants that the statute cited by Mr. Walters is inapplicable and does not confer a private right of action.  As noted above, § 4108 criminalizes commercial bribery;  it does not confer a private right of action.  *See Hasu Shah*, 2013 WL 6567764, at *11.  Accordingly, the Court will dismiss Count III and the Third Cause of Action.  Because amendment would be futile, dismissal will be with prejudice.  *See Passarella*, 2019 WL 399015, at *7.

**D.      Mr. Walters Has Failed to State a Claim for Conversion**

In Count IV of the Amended Complaint and two accompanying "Forth [sic] Cause[s] of Action]," Mr. Walters asserts a claim for conversion against all of the Defendants, seeking damages for pain and suffering and "unpaid wages." ECF No. 32 ¶¶ 43–52. Mr. Walters cites three statutes as the basis for his conversion claims: 15 Pa. C.S.A. § 355, 42 Pa. C.S.A. § 8553, and 43 P.S. § 260.9a.[12] *Id.* He alleges that Defendant Williams Jr. "froze" him, Defendant Quinn Williams, and non-party Steven Williams III out of OCS, prevented them from accessing corporate bank accounts and records, and prevented them from "having any role in corporate decision making." *Id.* ¶¶ 44–45. He further alleges that Defendants Williams Jr. and Cervalo "prevented [him] from taking any salary or distributions from [OCS]." *Id.* ¶ 46. As a result, Mr. Walters seeks damages for pain and suffering and unpaid wages from all of the Defendants. *Id.* ¶¶ 48–52. As with Mr. Walters' other claims, Defendants first argue that the statutes cited by Mr. Walters are inapplicable and do not provide him with a right of action. ECF No. 34 at 8–10. They further argue that Mr. Walters fails to plead facts supporting that he had any property that was converted by the Defendants, and that damages for pain and suffering and unpaid wages are not recoverable in a conversion case. *Id.* For the reasons set forth below, the Court agrees with the Defendants.

First, the Court agrees that the statutes cited by Mr. Walter are inapplicable. Section 355 sets forth the requirements for filing a statement of conversion to convert a corporation or other association into a separate form of entity. And § 8553, which Mr. Walters cites as the basis for seeking damages for pain and suffering, is similarly inapplicable because it limits damages for

---

[12] With respect to the last of these statutes, Mr. Walters cites to "Pa. C.S.A. 1961 Act 329," with a specific reference to "[s]ection 9.1 Civil Remedies and Penalties parts (a) and (b)." ECF No. 32 ¶ 51. The Court therefore infers that Mr. Walters is referring to section 9.1 of Pennsylvania's Wage and Payment Collection Law ("WPCL"), Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. § 260.9a.

claims asserted against local governmental entities. Finally, while § 260.9a does provide a right of action for an employee to sue for unpaid wages, the Court agrees with the Defendants that the Amended Complaint does not establish that unpaid wages are at issue in this case. Specifically, although Mr. Walters claims damages of "$400,000 for unpaid wages from 2021-2023," ECF No. 32 at 12, he also admits he was "pushed out" of OCS in "early 2021."[13]  *Id.* ¶ 3.  Mr. Walters cannot be entitled to wages he never earned. *See Walsh v. Alarm Sec. Grp., Inc.*, 95 F. App'x 399, 403 (3d Cir. 2004) ("The [WPCL] only extends to wages earned by employees but not paid by employers.").

Moreover, even if the Defendants had withheld Mr. Walters' wages, a conversion claim would not be the appropriate cause of action. "Under Pennsylvania law, the tort of conversion is the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith without the owner's consent and without legal justification." *Gary Miller Imports, Inc. v. Doolittle*, No. 1:11-CV-178, 2020 WL 7027483, at *14 (W.D. Pa. Nov. 30, 2020) (Baxter, J.) (citing *Universal Premium v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995)). "Money can be the subject of conversion, but before money can be converted, it must belong to the plaintiff." *Oldcastle Precast, Inc. v. VPMC, Ltd.*, No. CIV.A. 12-6270, 2013 WL 1952090, at *13 (E.D. Pa. May 13, 2013). Additionally, conversion claims are barred by the "gist of the action" doctrine when the plaintiff's alleged right to the property is based on a contract.[14]  *See id.*  Thus, where a plaintiff alleges that a defendant wrongfully withheld their wages, conversion is not the

---

[13] Exhibit I to Mr. Walters' Reply Brief confirms that "on Feb. 14, 2021 [he] removed [himself] from [OCS] as the CEO." ECF No. 36-9.

[14] "The gist of the action doctrine bars tort claims under the following circumstances: (1) where the claim arises solely from a contract between the parties; (2) where the duties allegedly breached were created by a contract; (3) where liability is derived from a contract; or (4) where the success of the tort claim is dependent on the terms of a contract." *Oldcastle Precast*, 2013 WL 1952090, at *7 (citing *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 582 (Pa. Super. 2003)).

appropriate cause of action because the wages were never in the control or possession of the plaintiff. *See Scott v. Phila. Hous. Auth.*, No. CIV.A. 10-4723, 2011 WL 1791095, at *10–12 (E.D. Pa. May 11, 2011) (dismissing a conversion claim for unpaid wages because the more appropriate cause of action was breach of contract).

Here, because Mr. Walters's conversion claim is to recover "unpaid wages," it fails as a matter of law because any unpaid wages were, by definition, never in Mr. Walters' possession. And insofar as Mr. Walters attempts to state a conversion claim against Defendants Williams Jr. and Cervalo for freezing him out of OCS and preventing him from receiving "distributions" as a 25% shareholder, he has failed to specifically identify the property which belonged to him and how the Defendants wrongfully deprived him of it. *See Oldcastle Precast*, 2013 WL 1952090, at *13 (dismissing conversion claim for money owed under a loan agreement because there was no allegation "that the money in question first 'belonged' to [the plaintiff]"); *see also Meyer v. Del. Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 494–95 (E.D. Pa. 2019) (holding that a conversion claim for "lost access to . . . salary, distribution of dividends, corporate-decision-making, and appraisal rights" was really a breach of contract claim disguised as a conversion claim, and was therefore barred by the gist of the action doctrine).

Finally, the Court agrees with the Defendants that Mr. Walters is not entitled to damages for pain and suffering in a claim for conversion. *See McDonald v. Wells Fargo Bank, N.A.*, 374 F. Supp. 3d 462, 513 (W.D. Pa. 2019) (Kearney, J.) (quoting *Pikunse v. Kopchinski*, 631 A.2d 1049, 1051 (Pa. Super. 1993)) (stating that under Pennsylvania law, the measure of damages for conversion is "the market value of the converted property at the time and place of conversion").

For all of the foregoing reasons, the Court will dismiss Count IV and the two accompanying "Forth" Causes of Action. The portions of this claim based on 15 Pa. C.S.A. § 355 and 42 Pa.

C.S.A. § 8553 will be dismissed with prejudice because amendment would be futile.  Similarly, the portions of this claim seeking unpaid wages pursuant to 43 P.S. § 260.9a and damages for pain and suffering will be dismissed with prejudice because amendment would be futile.  The portion of this claim alleging conversion based on Defendants Williams Jr. and Cervalo freezing Mr. Walters out of OCS and preventing him from receiving corporate "distributions" will be dismissed without prejudice and with leave to amend.  *See Passarella*, 2019 WL 399015, at *7.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss will be **GRANTED.**

The portion of Count I and the accompanying First Cause of Action asserting a claim under 18 Pa. C.S.A. § 4101 will be **DISMISSED WITH PREJUDICE**, and the portion asserting a common law fraud claim will be dismissed **WITHOUT PREJUDICE**.

The portions of Count II and the accompanying Second Cause of Action asserting a claim under 13 Pa. C.S.A. § 3307 and 18 Pa. C.S.A. § 4108 will be **DISMISSED WITH PREJUDICE**, and the portion asserting a common law breach of fiduciary duty claim will be dismissed **WITHOUT PREJUDICE** and with leave to amend.

Count III and the accompanying Third Cause of Action will be **DISMISSED WITH PREJUDICE.**

The portions of Count IV and the accompanying "Forth" Causes of Action asserting claims under 15 Pa. C.S.A. § 355, 42 Pa. C.S.A. § 8553, and 43 P.S. § 260.9a and seeking damages for unpaid wages and pain and suffering will be **DISMISSED WITH PREJUDICE**, and the portion asserting a conversion claim based on Defendants Williams Jr. and Cervalo freezing Mr. Walters out of OCS and preventing him from receiving corporate distributions will be **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

Any Second Amended Complaint shall be filed on or before **April 14, 2025**.  The Second Amended Complaint must not include any new Counts/Causes of Action and must be limited to the portions of Counts/Causes of Action II and IV which the Court permitted Mr. Walters to amend, and all allegations supporting those claims.

If Mr. Walters does not timely file a Second Amended Complaint, the dismissals without prejudice will be converted to dismissals with prejudice without further action from the Court.

DATED this 24th day of March, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

cc (via US mail):

Sean Lateef Walters
*Pro se*
1525 Arrowwood Road
Apt 338
Charlotte, NC 28217